## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BROOKE JUNKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-1962 |
| | ) | |
| MASCOUTAH COMMUNITY SCHOOL | ) | |
| DISTRICT 19 BOARD OF EDUCATION, | ) | **JURY TRIAL DEMANDED** |
| and TODD GOBER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Brooke Junker, by and through counsel, Mathis, Marifian & Richter, Ltd., and for her Complaint against the Defendants, Mascoutah Community School District 19 and Todd Gober, submits the following:

## NATURE OF ACTION

This is an action to correct unlawful gender discrimination and retaliation by the Mascoutah Community School District 19 Board of Education (the "District") and its employee, Todd Gober ("Gober"). Mascoutah Community Unit School District 19 is located in Mascoutah, Illinois, and consists of five schools, including Mascoutah High School. Plaintiff, Brooke Junker, is a female and was a student attending Mascoutah High School at all relevant times.

Plaintiff was a member of the Mascoutah High School Girls' Varsity volleyball team during the fall 2021 volleyball season. Throughout the season, Gober, the head volleyball coach, subjected Plaintiff and other members of the team to demoralizing and degrading activities, including but not limited to "spanking machines," where the girls were required to slap one another on the buttocks in a line, "barking seals," where the girls were required to lay on their stomachs

and make noises as if they were seals, and "donkey kicks," where the girls were to crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

Plaintiff spoke with a Mascoutah High School counselor concerning the uncomfortable acts she experienced at Gober's hands after Gober forced the girls to stand up in front of the school's spectators at a game, while he screamed at the girls for "letting down their fans." Plaintiff told other teammates about her counseling session, and the three other senior volleyball players also spoke with the counselor.  Because the counselor was concerned by the girls' comments, the counselor notified the athletic director of the issue.  The athletic director, in turn, notified Gober. In retaliation for speaking with the counselor, Gober punished the four senior girls, singled Plaintiff out as a "poison," and denied the girls opportunities they otherwise would have enjoyed as senior volleyball players.

Rather than appropriately disciplining or terminating Gober, Mascoutah High School allowed Defendant Gober to retaliate against Plaintiff and the other seniors throughout the volleyball season.  Gober stripped Plaintiff of her "captain" title, denied Plaintiff the opportunity to travel with the team, and prohibited Plaintiff from sitting with the team at games.

Plaintiff's parents complained to Gober, the high school principal, the athletic director, and members of the District's Board of Directors, who failed to take any action to protect Plaintiff or her teammates from Gober's abuse and retaliation.  Defendants' actions have detrimentally affected Plaintiff's education and health, and Plaintiff has suffered from mental and emotional distress, embarrassment, humiliation, anxiety, and depression.  Gober's behavior, and the District's deliberate indifference to such behavior, violated Plaintiff's constitutional and civil rights, and further constituted violations of Illinois state law.

## PARTIES

1.      Plaintiff Brooke Junker is a female citizen and resident of St. Clair County, Illinois.

2.      Mascoutah Community Unit School District 19 is, and at all times relevant herein was, a body politic and a school district organized and operating under the laws of the State of Illinois, located in St. Clair County.

3.      The Mascoutah Community Unit School District 19 Board of Education ("the District") is charged with, and responsible for, the operation of public schools within the district, and at all times relevant to this Complaint, was acting in that capacity under the color of state law.

4.      The District operates five schools including Mascoutah High School, physically located in Mascoutah, Illinois.

5.      Mascoutah Community Unit School District 19 is, and at all times relevant herein was, an education program or activity receiving federal financial assistance within the meaning of Title IX, 20 U.S.C. § 1681.

6.      Mascoutah Community Unit School District 19 is, and at all times relevant herein was, a unit of State, county, or local government in Illinois within the meaning of the Illinois Civil Rights Act of 2003, 740 ILCS § 23/5.

7.      Upon information and belief, Defendant Todd Gober ("Gober") is a citizen and resident of St. Clair County, Illinois.

8.      Defendant Gober is male, and at all times relevant herein, Defendant Gober was and is employed as the head girls' volleyball coach for Mascoutah High School.

## JURISDICTION

9.      The Court has subject matter jurisdiction over the lawsuit because the arises under 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

10.     Jurisdiction of the state law claims are founded upon the pendent or supplemental jurisdiction of the Court pursuant to *United Mine Workers of America v. Gibbs*, 38 U.S. 715 (1966), and 28 U.S.C. § 1367.

## FACTS

11.     At all times relevant herein, Plaintiff was enrolled as a student at Mascoutah High School.

12.     During the 2021-2022 school year, Plaintiff was in twelfth grade.

13.     Plaintiff was a member of the Mascoutah girls' volleyball team every year since ninth grade.

14.     During the fall of 2021, Plaintiff was a senior on the Mascoutah girls' volleyball team.

15.     Defendant Gober was the head girls' volleyball coach at Mascoutah High School during the fall 2021 season, and had been head coach since the fall 2014 season.

16.     As a senior, Plaintiff was a captain of the girls' varsity volleyball team during the fall 2021 season.

17.     During the summer preceding the 2021-2022 school year, Plaintiff had surgery for an injury.

18.     The surgery occurred the week before a summer volleyball camp was held for the Mascoutah girls' volleyball team.

19.     Because of her injury, Plaintiff was unable to participate in the volleyball camp, but was still in attendance at the camp.

20.     Due to the same injury, Plaintiff was injured and could not play volleyball at the start of the fall 2021 season.

21.     Nonetheless, at the beginning of the fall 2021 season, Plaintiff was selected as a captain of the girls' volleyball team.

***Gober Requires Participation in Demoralizing Activities during Private Practices and Camp***

22.     Since Plaintiff's freshman year and throughout her senior year, Gober forced Plaintiff and her teammates to experience and/or observe numerous demoralizing and degrading activities.

23.     These activities included, but were not limited to the following "punishments" for the losers of scrimmage games at volleyball practice:

    a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

    b.    "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

    c.    "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

    d.    "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

24.     Gober also required the girls to participate in other demeaning activities, such as an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

25.     At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

26.     Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

***Mistreatment Escalates to Public Humiliation***

27.     During Plaintiff's senior volleyball season, Gober's mistreatment escalated.

28.     During a game on or about Thursday, August 26, 2021, Gober forced the volleyball team to line up and face the spectators in the stands.

29.     While the girls were facing the spectators, Gober screamed at the girls, telling them they had "*let down their fans.*"

30.     Defendant Gober acted intentionally to publicly humiliate the girls and again assert his dominance over them.

***Senior Volleyball Players Meet with School Counselor***

31.     On or about Friday, August 27, 2021, Plaintiff spoke to the Mascoutah High School Counselor, Ty Smith ("Smith"), regarding her experience with Gober and being on the volleyball team.

32.     During her meeting with Smith, Plaintiff asked how to speak to Gober about how she and the other girls on the team were feeling.

33.     Plaintiff felt that her interaction with Smith was positive and helpful.

34.     The same day, Plaintiff e-mailed other girls on the volleyball team explaining that she had seen the school counselor and believed it would be helpful for other girls to do the same.

35.     That afternoon, three other seniors on the volleyball team also spoke with Smith.

36.     During the interaction, one of the girls made a statement that caused concern for Smith.

37.     According to Smith, "*Due to the severity of the statement made involving a staff member, [she, Smith] did need to report minimal information to administration.*"

**Confidentiality is Broken**

38.     After the meetings with Plaintiff and the other seniors on the girls' volleyball team, Counselor Smith reported the conversations and her concerns to Mascoutah High School's Athletic Director, Scott Battas ("Battas").

39.     Immediately upon receiving the information from Smith, Battas left the school and drove to Gober's place of employment, a local bank.

40.     While at the bank, Battas reported the four senior girls' conversations and concerns shared with Smith directly to Gober.

41.     The four seniors who spoke with Smith were unaware, at the time, that their interactions had been reported to anyone, much less reported directly to Gober.

42.     After meeting with Smith, the four seniors spoke with one of the assistant coaches, Breanna Gober ("Breezy") (Gober's wife), prior to their scheduled after-school practice, and asked Breezy if they could speak to Gober before practice.

43.     The four seniors intended to discuss bringing more positivity to the volleyball program with Gober.

44.     Gober did not speak to the four girls before practice, and what followed was not a practice at all for the four seniors.

***Gober Retaliates***

45.     Instead of practice, Gober took the four seniors aside for a private meeting while the rest of the team practiced without a coach.

46.     Gober scolded the four seniors for approximately 45 minutes, said that they had "*betrayed*" him by speaking with a counselor, told them that they were not to see or speak to a counselor, and further stated that they would not be participating in practice that day.

47.     Gober stated that he believed the four seniors were out for his job, no player was going to tell him how to run the program, and the girls were weak.

48.     Gober also accused the girls of going outside the chain of command and disrespecting him.

49.     Gober then cancelled practice for the following day (a Saturday).

50.     On or about Monday, August 30, 2021, Gober again met with Plaintiff and the other three senior girls privately while others were practicing.

51.     Gober told the girls that he had "given it some thought" over the weekend, and if the seniors wanted to be a part of the team, Gober had some conditions for the remainder of the season.

52.     As the first condition, Gober stripped Plaintiff and the other seniors of their status as captains and determined there would be no captains for the 2021-2022 volleyball season.

53.     As another condition, Gober declared no injured players could travel with the team to tournaments and they were prohibited from sitting on the bench at away games.

54.     In years past, injured players were allowed to travel with the team and routinely sat on the bench at away games.

55.     Plaintiff was one of three girls on the team that were injured at this time.

56.     Additionally, Gober declared that no injured players could sit on the bench during volleyball games, and players that *were* sitting on the bench were required to leave five seats open between the coaches and the first player.

57.     Prior to Plaintiff's conversation with Smith, Plaintiff sat directly next to Gober on the bench despite her injury and a five-seat gap was not required.

58.     Gober further disallowed injured players from lining up with the team and singing the National Anthem.

59.     Prior to Plaintiff's conversation with Smith, Plaintiff was permitted to line up with the team and sing the National Anthem despite her injury.

60.     As another condition, Defendant Gober declared no injured player would be permitted on the court during warm-ups.

61.     Prior to Plaintiff's conversation with Smith, Plaintiff was permitted on the court during warm-ups despite her injury.

62.     Defendant was selective with this condition and strictly enforced it against Plaintiff but not others.

63.     For example, during a game on or about September 1, 2021, a player with an ACL injury was given the opportunity to assist the other players on the court during warm-ups, but Plaintiff was prohibited from doing so.

64.     To further exert his power over them and retaliate against them, Gober required Plaintiff and the other senior girls to set-up and take-down the volleyball nets, which was typically a task reserved for the freshman, sophomores, and juniors on the team.

65.     Moreover, if asked why they were setting up or taking down the volleyball nets, Defendant Gober prohibited the girls from saying that they were required to do so or that it was part of a punishment, and told them to "*make it look like you're doing it on your own*."

66.     In addition, Gober prohibited Plaintiff and the three other senior girls from leading stretches, participating in coin tosses at games, or organizing team dinners, functions, or meetings.

***Initial Parent Communications***

67.     On or about Sunday, August 29, 2021, Plaintiff's father, Jeff Junker ("Jeff") met with Gober.

68.     Jeff was the assistant principal at Mascoutah High School at the time of this meeting, but met with Gober in his capacity as Plaintiff's father, and not as a representative of the school, during such meeting.

69.     The meeting was entirely unproductive, and Jeff was not successful in convincing Gober to resolve the matter without punishing the four senior volleyball players for talking to the school counselor.

70.     During the meeting, Gober told Jeff that Gober was going to punish the senior girls in order to "*set an example*."

71.     The next day, Monday, August 30, 2021, was when Gober met with the seniors and imposed his conditions on their team membership.

72.     On or about Tuesday, August 31, 2021, Plaintiff's mother, Beth Junker ("Beth"), contacted the Mascoutah High School principal, Brandon Woodrome ("Woodrome") and requested a meeting.

73.     Woodrome told Beth that she needed to follow a protocol:

*[I]f there is an issue, request a meeting with the coach.  If the issue is not resolved, request a meeting with the AD and Coach.  Player must be present.  If it's not resolved, then we will bring it to the principal.  I am willing to do that.  I've heard from you and Jeff and that's it.*

74.     Beth immediately contacted Battas to advise that since Jeff had already met with Gober, she wanted to request the next step in the process, which was to meet with Gober and Battas (the coach and athletic director, respectively).

75.     On or about Wednesday, September 1, 2021, Beth e-mailed Woodrome and copied Battas.

76.     She advised that upon further reflection, she believed that having further meetings with Gober would be detrimental to Plaintiff, specifically noting that Gober had previously retaliated against Plaintiff for using a school support: the school counselor.

77.     Beth advised that she was now requesting a meeting with Woodrome and Battas only, excluding Gober.

78.     In her e-mail, Beth relayed the events that had occurred since Plaintiff met with Smith on Friday, August 27, 2021, and asked how Woodrome would protect Plaintiff and the other volleyball players.

79.     A meeting was scheduled between Woodrome, Battas, and Beth for the following day, Thursday, September 2, 2021 at 3:30pm.

80.     Also on Wednesday, September 1, 2021, Beth e-mailed Smith.

81.     Beth advised Smith that Gober was retaliating against Plaintiff and the other senior volleyball players because they had met with Smith the previous Friday, stating, "*The health and safety and the mental wellness of my daughter and others are at risk, because they used a resource within a school.*"

82.     Smith agreed to meet with Woodrome, Battas, and Beth at their scheduled meeting the next day.

***Meeting of September 2, 2021***

83.     Beth met with Woodrome, Battas, and Smith on September 2, 2021 at 3:30pm as scheduled.

84.     During this meeting, Beth verbally discussed her concerns regarding Gober's treatment of Plaintiff and the other girls on the volleyball team, and also provided a typed document she prepared, expressing her concerns in writing.

85.     Beth specifically asked, "*How can the Mascoutah 19 administration and Board stand behind a man that seemingly uses intimidation, and humiliation as a tactic*"?

86.     Beth reiterated that at Plaintiff's volleyball practice of August 27, 2021, Gober used the fact that Plaintiff and her friends saw a school counselor against them – after Battas went out of his way to leave school and inform Gober (the reason for the counseling session) of the fact that the session occurred.

87.     Beth questioned why the administration, which thought the girls' allegations were serious enough to merit sharing outside the confidentiality of the girls' counseling session of August 27, 2021, would not be present at the volleyball practice scheduled for August 27, 2021.

88.     During the meeting of September 2, 2021, Beth also presented the administration with a written journal Plaintiff created after the volleyball practice of Monday, August 30, 2021 –

the date when Gober set forth his conditions for the senior girls to participate in the remainder of the volleyball season.

89.     The journal outlined Gober's declarations concerning the seniors going "*around [his] chain of command*," for speaking with a social worker, as well as the conditions Gober imposed upon the seniors for doing so.

90.     During the meeting of September 2, 2021, Beth requested that the administration conduct a full investigation into Gober's conduct and interview the girls' volleyball team members.

91.     Beth further brought the difference in treatment between the boys' and girls' teams at Mascoutah High School to the attention of Battas.

92.     Beth outlined the difference of injured players' treatment on the boys' soccer and football teams compared to that of the girls' volleyball team.

93.     Specifically, the boys' soccer and football teams allowed their injured players to travel with the team and sit on the bench, whereas the girls' volleyball team no longer allowed the injured players to travel as part of the team or sit on the bench.

94.     At the time of the September 2, 2021 meeting, Beth had no knowledge of the demoralizing treatment to which Plaintiff and other volleyball players had been subjected during private volleyball practices and camp (e.g., the "spanking machine," etc.), and therefore, did not include such information in her documentation or verbal complaints.

95.     Plaintiff felt humiliated and embarrassed regarding the demoralizing treatment that occurred when parents were not present to witness it, and did not share this information with her mother until months later.

*The Aftermath*

96.     Ultimately, no actions were taken against Defendant Gober during Plaintiff's remaining 2021 senior volleyball season.

97.     Instead, Defendant Gober continued coaching the girls' volleyball team with all of his "conditions" in place.

98.     Beth received no follow-up from the District concerning her September 2, 2021 demand for an investigation into Gober's conduct during the entirety of the volleyball season.

99.     On or about November 8, 2021, Gober e-mailed the volleyball team members and their parents and advised that he would be holding a "players-only" banquet on November 10, 2021 (two days later).

100.     Gober's e-mail stated, "*This is in no way a reflection of ill-will towards parents, or a reflection of any issues…*" while simultaneously ensuring that Plaintiff and the other senior volleyball team members would not be recognized before their parents for their efforts their senior year.

101.     Gober further stated, "*While we are doing a players-only banquet this year, that does not mean this is the new tradition, and that we will always be doing player-only banquets in the future.  In fact, it could change next year.*"

102.     The same evening, Beth informed District Board Members Rhonda Ross and Kristin Geis of the players-only banquet, her concern that Gober had been given too much power, and its detriment to her daughter.

103.     In her communications, Beth further informed the Board Members of her concerns stemming from his retaliation against Plaintiff for meeting with the school counselor earlier in the year.

104.    On or about November 9, 2021, Beth forwarded Gober's e-mail to Woodrome, and requested that an administrator attend the banquet so that the players would be treated fairly and Gober would not "*get into their heads*."

105.    No administrators attended the banquet despite Beth's request.

***Follow-Up and Additional Information Reported***

106.    Following the banquet, Plaintiff finally disclosed to her mother the degrading activities that Gober forced her and the other volleyball players to experience and/or observe during private practice sessions and at camp, where no parents were present to witness it (e.g., the "spanking machine," etc.).

107.    On November 18, 2021, Beth again reached out to Woodrome, Battas, and Smith after learning these additional details.

108.    Beth reiterated her prior concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the additional information she had recently learned from Plaintiff concerning the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

109.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation*."

110.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, <u>whether male or female</u> has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

111.    Battas responded to Beth's e-mail to advise that he would discuss Beth's concern with his superiors.

112.    Woodrome responded, "*Thank you, Beth*."

***The District's Response***

113.    The District provided no further information until March 1, 2022, when Battas sent an e-mail to Beth stating that "*I, along with [Superintendent] Dr. [Craig] Fiegel, and Mr. Woodrome, did review each concern individually,*" and had "*put some things in place moving forward . . . [and] [t]hose confidential expectations have been agreed upon by all parties and we will move forward with those details clearly understood.*"

114.    The District did not reprimand Gober, and he continues to serve as the head coach of the volleyball team.

***Detriment to Plaintiff***

115.    As a direct and proximate result of Gober's actions and the District's failure to appropriately address same, Plaintiff's education and health have suffered a severe detriment.

116.    Defendants' actions have caused mental and emotional distress, embarrassment, humiliation, anxiety, and depression.

117.    Such actions were intentional and/or taken with reckless disregard to Plaintiff's federally protected rights.

## <u>COUNT I</u>
## Violation of Title IX, 20 U.S.C. § 1681 (Discrimination)
## (Against the District)

118.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

119.    Title IX of the Education Amendments Act of 1972 provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

120.    At all times relevant herein, the District constituted an education program or activity receiving Federal financial assistance and otherwise met all of the relevant criteria of Title IX for status as a defendant to a Title IX suit.

121.    At all times relevant herein, Plaintiff was a beneficiary of Federal assistance to public schools.

122.    A representative, agent, or employee of the District, and the District itself, discriminated against Plaintiff in that, as a member of the girls' volleyball team at Mascoutah High School, Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

123.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

      a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

      b.    "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

      c.    "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

    d.   "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

124.   The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

125.   At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

126.   Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

127.   Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

128.   When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

129.   The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite immediately receiving complaints from Plaintiff's father and mother.

130.   Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private

practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

131.    Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

132.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation*."

133.    Gober's actions were severe and objectively offensive, and deprived Plaintiff of access to educational opportunities.

134.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, whether male or female has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

135.    Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players..

136.    Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

137.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

138.    Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

139.    The District responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

140.    The District invested officials who had actual knowledge of Gober's actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

141.    Gober continues to serve as the head coach of the girls' volleyball team.

142.    As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

143.    As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages;

(b)    Attorney fees;

(c)    Costs; and

(d)    All other relief that the Court deems just and proper.

**COUNT II**
**Violation of Title IX, 20 U.S.C. § 1681 (Retaliation)**
**(Against the District)**

144.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

145.    Title IX of the Education Amendments Act of 1972 provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

146.    At all times relevant herein, the District constituted an education program or activity receiving Federal financial assistance and otherwise met all of the relevant criteria of Title IX for status as a defendant to a Title IX suit.

147.    At all times relevant herein, Plaintiff was a beneficiary of Federal assistance to public schools.

148.    A representative, agent, or employee of the District, and the District itself, discriminated against Plaintiff in that, as a member of the girls' volleyball team at Mascoutah High School, Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

149.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

  a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

  b.    "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

c. "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

d. "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

150.   The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

151.   At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

152.   Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

153.   Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

154.   When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

155.   The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite immediately receiving complaints from Plaintiff's father and mother.

156.    Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

157.    Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

158.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation*."

159.    Gober's actions were severe and objectively offensive, and deprived Plaintiff of access to educational opportunities.

160.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, <u>whether male or female</u> has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

161.    Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players.

162.    Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

163.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

164.    Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

165.    The District responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

166.    The District invested officials who had actual knowledge of Gober's actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

167.    Gober continues to serve as the head coach of the girls' volleyball team.

168.    As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

169.    As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

(a)     Compensatory damages;

(b)     Attorney fees;

(c)     Costs; and

(d)     All other relief that the Court deems just and proper.

## <u>COUNT III</u>
## Violation of 42 U.S.C. § 1983 (Discrimination)
## (Against the District)

170.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

171.    At all times relevant herein, Plaintiff had a constitutional right to be free from discrimination based on sex.

172.    A representative, agent, or employee of the District, and the District itself, discriminated against Plaintiff in that, as a member of the girls' volleyball team at Mascoutah High School, Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

173.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

   a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

   b.    "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

   c.    "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

    d.   "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

174.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

175.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

176.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

177.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

178.    When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

179.    The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite immediately receiving complaints from Plaintiff's father and mother.

180.    Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private

practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

181.    Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

182.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation.*"

183.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, whether male or female has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

184.    Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players.

185.    Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

186.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

187.    Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

188.    The District responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

189.    Gober continues to serve as the head coach of the girls' volleyball team.

190.    The actions of the District and Gober were taken in violation of Plaintiff's equal protection rights.

191.    The District invested officials who had actual knowledge of such actions with the duty to supervise and that power to end the actions, but such officials failed to do so.

192.    At all relevant times, the District was an entity with final policymaking authority, having full power to manage its schools and adopt all rules and regulations needed for that purpose.

193.    At all relevant times, the District acted under color of state law.

194.    As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

195.    As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

    (a)    Compensatory damages;

    (b)    Attorney fees;

    (c)    Costs; and

    (d)    All other relief that the Court deems just and proper.

## <u>COUNT IV</u>
### Violation of 42 U.S.C. § 1983 (Free Speech)
### (Against the District)

196.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

197.    At all times relevant herein, Plaintiff had a constitutional right to freedom of speech.

198.    Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

199.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

      a.   "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

      b.   "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

      c.   "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

      d.   "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

200.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

201.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

202.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

203.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

204.    Plaintiff and other seniors on the girls' volleyball team spoke with a school counselor regarding Gober's concerning behavior and how to approach him.

205.    During the interaction, one of the girls made a statement that caused concern for Smith.

206.    According to Smith, "*Due to the severity of the statement made involving a staff member, [she, Smith] did need to report minimal information to administration.*"

207.    After the meetings with Plaintiff and the other seniors on the girls' volleyball team, Counselor Smith reported the conversations and her concerns to Battas, Mascoutah High School's Athletic Director.

208.    Immediately upon receiving the information from Smith, Battas left the school and drove to Gober's place of employment, a local bank.

209.    While at the bank, Battas reported the four senior girls' conversations and concerns shared with Smith directly to Gober.

210.    Despite purportedly needing to break confidentiality due to the concerning nature of the statements, then informing Gober of those statements, Battas did not attend the girls' volleyball practice to protect them.

211.    After Battas informed Gober that Plaintiff and others had spoken to a counselor about him, Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

212.    As the first condition, Gober stripped Plaintiff and the other seniors of their status as captains and determined there would be no captains for the 2021-2022 volleyball season.

213.    As another condition, Gober declared no injured players could travel with the team to tournaments and they were prohibited from sitting on the bench at away games..

214.    In years past, injured players were allowed to travel with the team and routinely sat on the bench at away games.

215.    Plaintiff was one of three girls on the team that were injured at this time.

216.    Additionally, Gober declared that no injured players could sit on the bench during volleyball games, and players that *were* sitting on the bench were required to leave five seats open between the coaches and the first player.

217.    Prior to Plaintiff's conversation with Smith, Plaintiff sat directly next to Gober on the bench despite her injury and a five-seat gap was not required.

218.    Gober further disallowed injured players from lining up with the team and singing the National Anthem.

219.     Prior to Plaintiff's conversation with Smith, Plaintiff was permitted to line up with the team and sing the National Anthem despite her injury.

220.     As another condition, Defendant Gober declared no injured player would be permitted on the court during warm-ups.

221.     Prior to Plaintiff's conversation with Smith, Plaintiff was permitted on the court during warm-ups despite her injury.

222.     Defendant was selective with this condition and strictly enforced it against Plaintiff but not others.

223.     For example, during a game on or about September 1, 2021, a player with an ACL injury was given the opportunity to assist the other players on the court during warm-ups, but Plaintiff was prohibited from doing so.

224.     To further exert his power over them and retaliate against them, Gober required Plaintiff and the other senior girls to set-up and take-down the volleyball nets, which was typically a task reserved for the freshman, sophomores, and juniors on the team.

225.     Moreover, if asked why they were setting up or taking down the volleyball nets, Defendant Gober prohibited the girls from saying that they were required to do so or that it was part of a punishment, and told them to "*make it look like you're doing it on your own*."

226.     In addition, Gober prohibited Plaintiff and the three other senior girls from leading stretches, participating in coin tosses at games, or organizing team dinners, functions, or meetings.

227.     Plaintiff's mother immediately reported these unfair conditions to the District, specifically pointing out that the conditions were imposed in retaliation for Plaintiff's complaints.

228.    The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite these immediate complaints from Plaintiff's father and mother.

229.    Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

230.    Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

231.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation.*"

232.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, whether male or female has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?

233.    The District again responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

234.    Gober continues to serve as the head coach of the girls' volleyball team.

235.    The actions of the District and Gober were taken in violation of Plaintiff's right to freedom of speech.

236.    The District invested officials who had actual knowledge of such actions with the duty to supervise and that power to end the actions, but such officials failed to do so.

237.    At all relevant times, the District was an entity with final policymaking authority, having full power to manage its schools and adopt all rules and regulations needed for that purpose.

238.    At all relevant times, the District acted under color of state law.

239.    As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

240.    As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages;

(b)    Attorney fees;

(c)    Costs; and

(d)    All other relief that the Court deems just and proper.

**COUNT V**
**Violation of 42 U.S.C. § 1983 (Discrimination)**
**(Against Gober)**

241.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

242.    At all times relevant herein, Plaintiff had a constitutional right to be free from discrimination based on sex.

243.    Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

244.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

    a.  "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

    b.  "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

    c.  "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

    d.  "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

245.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

246.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

247.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

248.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

249.    When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

250.    Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players.

251.    Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

252.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

253.    Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

254.    The actions of Gober were taken in violation of Plaintiff's equal protection rights and with deliberate indifference to those rights.

255.    At all relevant times, Gober acted under color of state law.

256.    As a direct and proximate result of Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

257.    As a direct and proximate result of the Gober's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against Gober and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages;

(b)    Punitive damages in excess of $500,000.00;

(c)    Attorney fees;

(d)    Costs; and

(e)    All other relief that the Court deems just and proper.

### COUNT VI
### Violation of 42 U.S.C. § 1983 (Free Speech)
### (Against Gober)

258.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

259.    At all times relevant herein, Plaintiff had a constitutional right to freedom of speech.

260.    Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

261.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

a. "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

b. "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

c. "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

d. "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

262.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

263.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

264.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

265.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

266.    Plaintiff and other seniors on the girls' volleyball team spoke with a school counselor regarding Gober's concerning behavior and how to approach him.

267.    During the interaction, one of the girls made a statement that caused concern for Smith.

268.    According to Smith, "*Due to the severity of the statement made involving a staff member, [she, Smith] did need to report minimal information to administration.*"

269.    After the meetings with Plaintiff and the other seniors on the girls' volleyball team, Counselor Smith reported the conversations and her concerns to Battas, Mascoutah High School's Athletic Director.

270.    Immediately upon receiving the information from Smith, Battas left the school and drove to Gober's place of employment, a local bank.

271.    While at the bank, Battas reported the four senior girls' conversations and concerns shared with Smith directly to Gober.

272.    Despite purportedly needing to break confidentiality due to the concerning nature of the statements, then informing Gober of those statements, Battas did not attend the girls' volleyball practice to protect them.

273.    After Battas informed Gober that Plaintiff and others had spoken to a counselor about him, Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

274.    As the first condition, Gober stripped Plaintiff and the other seniors of their status as captains and determined there would be no captains for the 2021-2022 volleyball season.

275. As another condition, Gober declared no injured players could travel with the team to tournaments and they were prohibited from sitting on the bench at away games..

276. In years past, injured players were allowed to travel with the team and routinely sat on the bench at away games.

277. Plaintiff was one of three girls on the team that were injured at this time.

278. Additionally, Gober declared that no injured players could sit on the bench during volleyball games, and players that *were* sitting on the bench were required to leave five seats open between the coaches and the first player.

279. Prior to Plaintiff's conversation with Smith, Plaintiff sat directly next to Gober on the bench despite her injury and a five-seat gap was not required.

280. Gober further disallowed injured players from lining up with the team and singing the National Anthem.

281. Prior to Plaintiff's conversation with Smith, Plaintiff was permitted to line up with the team and sing the National Anthem despite her injury.

282. As another condition, Defendant Gober declared no injured player would be permitted on the court during warm-ups.

283. Prior to Plaintiff's conversation with Smith, Plaintiff was permitted on the court during warm-ups despite her injury.

284. Defendant was selective with this condition and strictly enforced it against Plaintiff but not others.

285. For example, during a game on or about September 1, 2021, a player with an ACL injury was given the opportunity to assist the other players on the court during warm-ups, but Plaintiff was prohibited from doing so.

286.   To further exert his power over them and retaliate against them, Gober required Plaintiff and the other senior girls to set-up and take-down the volleyball nets, which was typically a task reserved for the freshman, sophomores, and juniors on the team.

287.   Moreover, if asked why they were setting up or taking down the volleyball nets, Defendant Gober prohibited the girls from saying that they were required to do so or that it was part of a punishment, and told them to "*make it look like you're doing it on your own.*"

288.   In addition, Gober prohibited Plaintiff and the three other senior girls from leading stretches, participating in coin tosses at games, or organizing team dinners, functions, or meetings.

289.   The actions of Gober were taken in violation of Plaintiff's right to freedom of speech.

290.   At all relevant times, Gober acted under color of state law.

291.   As a direct and proximate result of Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

292.   As a direct and proximate result of the Gober's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against Gober and for relief in accordance therewith, including but not limited to:

(a)   Compensatory damages;

(b)   Punitive damages in excess of $500,000.00;

(c)   Attorney fees;

(d)   Costs; and

(e)      All other relief that the Court deems just and proper.


## COUNT VII
### Violation of Illinois Civil Rights Act (Discrimination)
### (Against the District)

293.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

294.    At all times relevant herein, the District constituted a unit of State, county, or local government in Illinois within the meaning of the Illinois Civil Rights Act of 2003, 640 ILCS § 23/5.

295.    A representative, agent, or employee of the District, and the District itself, discriminated against Plaintiff in that, as a member of the girls' volleyball team at Mascoutah High School, Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

296.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

b. "Kill the Squirrel" – The girls on the losing team are lined up on a wall. The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

c. "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

d. "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

297.     The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

298.     At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

299.     Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

300.     Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

301.     When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

302.     The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite immediately receiving complaints from Plaintiff's father and mother.

303.     Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

304.     Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

305.     Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation.*"

306.     Gober's actions were severe and objectively offensive, and deprived Plaintiff of access to educational opportunities.

307.     Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, whether male or female has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

308.     Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players.

309.     Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

310.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

311.    Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

312.    The District responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

313.    The District invested officials who had actual knowledge of Gober's actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

314.    Gober continues to serve as the head coach of the girls' volleyball team.

315.    As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

316.    As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages;

(b)    Attorney fees;

(c)    Costs; and

(d)    All other relief that the Court deems just and proper.

## COUNT VIII
## Violation of Illinois Civil Rights Act (Retaliation)
## (Against the District)

317.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

318.    At all times relevant herein, the District constituted a unit of State, county, or local government in Illinois within the meaning of the Illinois Civil Rights Act of 2003, 640 ILCS § 23/5.

319.    A representative, agent, or employee of the District, and the District itself, discriminated against Plaintiff in that, as a member of the girls' volleyball team at Mascoutah High School, Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

320.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

b.    "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

    c.   "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

    d.   "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

321.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

322.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

323.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

324.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

325.    When Plaintiff spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

326.    The District was aware of these unfair conditions and permitted them to continue for the remainder of the volleyball season despite immediately receiving complaints from Plaintiff's father and mother.

327.    Additionally, after the season's end, Plaintiff's mother, Beth, reported Gober's insistence that Plaintiff and others participate in demeaning and degrading activities during private practices and camp to the District Board Members, Mascoutah High School Principal, and Athletic Director.

328.    Beth reiterated her concern that Gober used the fact that the four seniors visited a counselor against them, and relayed the degrading activities Gober forced the girls to experience and/or observe during private practices and camp.

329.    Beth also advised Woodrome, Battas, and Smith of the effect of Gober's actions on Plaintiff, which included slipping grades and a "*dangerous mental health situation*."

330.    Gober's actions were severe and objectively offensive, and deprived Plaintiff of access to educational opportunities.

331.    Beth asked, "*[W]hat steps are being taken to rectify this issue and make sure any athlete, whether male or female has the right to pursue mental health avenues, even if the coach disagrees, without receiving punishments or actions against them*"?  (Emphasis added)

332.    Participants in boys' sports at Mascoutah High School can expect an entirely different experience than participants on the girls' volleyball team, and are not subjected to the same degrading and demeaning activities as girls' volleyball players.

333.    Participants in boys' sports at Mascoutah High School can expect that their confidential communications with school counselors concerning intimidation will not be reported directly to the person doing the intimidating.

334.    Participants in boys' sports at Mascoutah High School can expect that they will not be punished for speaking with school counselors or otherwise expressing concerns to school administration regarding their coaches and/or the sports in which they participate.

335.   Participants in boys' sports at Mascoutah High School can expect to participate and travel with the team regardless of an injury.

336.   The District responded to Plaintiff's mother's complaints with callous indifference and failed to reprimand Gober in any way or take appropriate corrective action.

337.   The District invested officials who had actual knowledge of Gober's actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

338.   Gober continues to serve as the head coach of the girls' volleyball team.

339.   As a direct and proximate result of the District's decision to accept Gober's actions, Plaintiff's education at Mascoutah High School and her personal health, physical and mental, have been adversely affected.

340.   As a direct and proximate result of the District's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Brooke Junker prays for judgment against the District and for relief in accordance therewith, including but not limited to:

(a)   Compensatory damages;

(b)   Attorney fees;

(c)   Costs; and

(d)   All other relief that the Court deems just and proper.

### COUNT IX
### Intentional Infliction of Emotional Distress
### (Against Gober)

341.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

342.    Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

343.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

   a.   "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

   b.   "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

   c.   "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

   d.   "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

344.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

345.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

346.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

347.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

348.    When Plaintiff and other team members spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

349.    Gober's mistreatment escalated after the girls talked to their school counselor.

350.    Gober intended to instill fear in the players after their meeting with the school counselor, and he instructed them that they were not to meet with the counselor.

351.    Gober was aware that Plaintiff was particularly susceptible to emotional distress, having knowledge of her meeting with the school counselor.

352.    Gober either intended his conduct to inflict severe emotional distress on Plaintiff or recklessly or consciously disregarded the probability that his conduct would cause emotional distress to Plaintiff.

353.    Gober was in a position of power and control over Plaintiff at the time of the conduct in question.

354.    Defendant Gober's conduct was extreme and outrageous.

355.    Defendant Gober acted willfully and maliciously.

356.    As a direct and proximate result of the acts and omissions set forth above, Plaintiff has been damaged in that she suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety.

WHEREFORE, Plaintiff Brooke Junker prays for Judgment against Defendant Gober and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages; and

(b)    All other relief that the Court deems just and proper.

## COUNT X
### Intentional Infliction of Emotional Distress
### (Against the District)

357.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 as if fully set forth herein.

358.    Gober forced Plaintiff to participate in numerous degrading and demeaning activities intended to humiliate and intimidate Plaintiff and the other female volleyball players.

359.    These activities included, without limitation, the following "punishments" reserved for losers of scrimmage games during private volleyball practices and camp, where parents were not present to witness them:

a.    "Spanking Machine" –The girls on the winning team stand in a line with their legs spread apart.  The girls on the losing team must crawl through the legs of the girls on the winning team and permit those standing to slap the buttocks of those crawling, at times hard enough to leave hand-shaped marks on the buttocks.

b. "Kill the Squirrel" – The girls on the losing team are lined up on a wall.  The girls on the winning team serve volleyballs at the losers and attempt to hit them. The losers cannot leave the wall until they are hit.

c. "Seal Barks" – The girls on the losing team must lay on their stomachs and bark like seals.

d. "Donkey Kicks" - The girls on the losing team must crawl around like donkeys, kick their feet so they hit their own buttocks a certain number of times, and make "hee-haw" sounds.

360.    The activities also included participation in an obstacle course race where the girls were partnered up, one partner blindfolded, and the other partner forced to attempt to lead the blindfolded partner through a maze of *set* mouse traps without using words for direction such as "forward," "backward," "left," or "right."

361.    At the end of the obstacle course, participants who did not perform well were required to eat sardines, radishes, and other disfavored food while blindfolded, while the winners received food they enjoyed.

362.    Gober orchestrated all of these activities to intimidate and humiliate the girls and exert power and control over them.

363.    Gober further humiliated the girls publicly in front of spectators by forcing them to line up and face their fans while he screamed at them for letting their fans down.

364.    When Plaintiff and other team members spoke with a school counselor regarding Gober's concerning behavior, the District informed Gober, and Gober imposed further humiliating conditions on Plaintiff's continued membership on the volleyball team.

365.    Gober's mistreatment escalated after the girls talked to their school counselor.

366.   Gober intended to instill fear in the players after their meeting with the school counselor, and he instructed them that they were not to meet with the counselor.

367.   Gober and the District were aware that Plaintiff was particularly susceptible to emotional distress, having knowledge of her meeting with the school counselor.

368.   Gober either intended his conduct to inflict severe emotional distress on Plaintiff or recklessly or consciously disregarded the probability that his conduct would cause emotional distress to Plaintiff.

369.   Gober was in a position of power and control over Plaintiff at the time of the conduct in question.

370.   Defendant Gober's conduct was extreme and outrageous.

371.   Defendant Gober acted willfully and maliciously.

372.   The District was well-aware of Gober's misconduct as set forth herein, and permitted such misconduct to continue throughout the fall 2021 volleyball season despite multiple complaints and requests to address such misconduct.

373.   The District failed to discipline or reprimand Gober in any way for his misconduct.

374.   As a direct and proximate result of the acts and omissions set forth above, Plaintiff has been damaged in that she suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety.

WHEREFORE, Plaintiff Brooke Junker prays for Judgment against the District and for relief in accordance therewith, including but not limited to:

(a)    Compensatory damages; and

(b)    All other relief that the Court deems just and proper.

Respectfully Submitted,

**MATHIS, MARIFIAN & RICHTER, LTD.**

By _Natalie Lorenz_

Natalie Lorenz, #6309572
Montana L. Sinn, #6339689
23 Public Square, Suite 300
P.O. Box 307
Belleville, IL 62220
(618) 234-9800 Phone
(618) 234-9786 Fax
nlorenz@mmrltd.com
msinn@mmrltd.com

Attorneys for Plaintiff