IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BROOKE JUNKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 3:22-cv-1962-DWD |
| MASCOUTAH COMMUNITY ) | |
| SCHOOL DISTRICT 19 BOARD OF ) | |
| EDUCATION and TODD GOBER, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' Motion for Leave to Take More Than 10 Depositions (Doc. 32) and Motion to Quash Subpoenas to Defendant Gober's Former Employers (Doc. 33). Plaintiff filed a Response in Opposition to each of Defendants' Motions (Docs. 35 & 36). For the following reasons, each Motion is **GRANTED**.

### I. Background

Plaintiff is a female who, during the fall of 2021, was a senior on the Mascoutah High School girls' volleyball team. (Doc. 1, pgs. 1, 4). During that season and in prior seasons, Defendant Gober, who had been the varsity head coach since approximately 2014, allegedly subjected the team members to "demoralizing and degrading activities" at practice. (Doc. 1, pgs. 1-2, 4-6). Plaintiff eventually met with a counselor at Mascoutah High School about her experience on the team. (Doc. 1, pgs. 2, 6). Defendant Gober allegedly became aware of that meeting, and of the meetings of three other seniors with the counselor, then "scolded" the four seniors and imposed conditions on their ability to

remain on the team. (Doc. 1, pgs. 8-10). Despite Plaintiff's parent's reports to and meetings with Defendant Gober and/or other Mascoutah High School officials, the Mascoutah Community School District 19 Board of Education ("District") allegedly failed to take action to protect Plaintiff or discipline Defendant Gober. (Doc. 1, pgs. 2, 8, 11-15).

Plaintiff filed a Complaint, alleging: (1) violations of Title IX, 20 U.S.C. § 1681, due to sex discrimination and retaliation by the District (Counts I & 2); (2) violations of 42 U.S.C. § 1983 due to sex discrimination and infringements of the right to free speech by the District (Counts III & IV); (3) violations of 42 U.S.C. § 1983 due to sex discrimination and infringements of the right to free speech by Defendant Gober (Counts V & VI); (4) violations of the Illinois Civil Rights Act (740 ILCS 23/1 *et seq.*) due to sex discrimination and retaliation by the District (Counts VII & VIII); and (5) the intentional infliction of emotional distress by each Defendant under Illinois law (Count IX & X).

## II. Analysis

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery, unless otherwise limited by the Court, is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and [is] proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Moreover, under Rule 26(b)(2)(C), the Court must limit discovery if it finds:

2

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The Court has "extensive discretion" to decide discovery matters. *See Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019); *see also Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) ("Because the district court is far better situated to pass on discovery matters, [the Seventh Circuit] review[s] its discovery decisions for an abuse of discretion."). Courts may refuse discovery of matters that are "of 'marginal relevance,' " and it is an assessment of proportionality that is essential. *See Motorola Solutions, Inc.*, 365 F. Supp. at 924 (citation to internal quotations omitted); *see also Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, *2 (S.D. Ill. Nov. 1, 2022) (stating "relevancy" is broadly construed to encompass matters bearing on, or reasonably leading to matters bearing on, issues in the case, and "proportionality" requires a common sense, experiential, careful, and realistic assessment of actual need).

**A. The Motion for Leave to Take More Than 10 Depositions (Doc. 32)**

Defendants invoke Federal Rule of Civil Procedure 30(a)(2), which states: "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)…if the parties have not stipulated to the deposition and…the deposition would result in more than 10 depositions being taken under this rule or Rule

3

31." One purpose of Rule 30(a) is "to emphasize counsel's 'professional obligation to develop a mutual cost-effective [discovery] plan.' [Citations]." *See PeopleFlo Mfg, Inc. v. Sundyne, LLC*, No. 20-cv-3642, 2022 WL 1062706, *1 (N.D. Ill. April 8, 2022). The party seeking to take additional depositions, *i.e.*, Defendants, must make a particular showing of need for the depositions. *See id.* at *2 (quoting *Farris v. Kohlrus*, No. 17-cv-3279, 2020 WL 10691950, *3 (C.D. Ill. June 12, 2020)). The Court considers the totality of the circumstances when ruling on the request. *See id.* (quoting *Farris*, No. 17-cv-3279, 2020 WL 10691950, *3). Again, the Court has broad discretion to decide such matters. *See id.* (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Defendants have deposed Plaintiff and her parents. (Doc. 32, pg. 3). Now, they seek leave to depose 21 other persons, including: (1) the counselor who met with Plaintiff and the three other Mascoutah High School volleyball players; (2) Plaintiff's two treating physicians; (3) Plaintiff's current volleyball coach and former club volleyball coach, who Plaintiff allegedly "spoke with regarding the issues identified in her complaint and who would have knowledge of her mental state"; (4) two parents of Mascoutah High School volleyball players who allegedly complained about Defendant Gober in the past; (5) two former Mascoutah High School volleyball players who allegedly left the volleyball team "due to negative experiences" with Defendant Gober; (6) the three other Mascoutah High School volleyball players who, along with Plaintiff, met with the counselor; (7) a Mascoutah High School volleyball player who allegedly made a separate complaint about Defendant Gober in the past; (8) two Mascoutah High School volleyball players who allegedly spoke to their parents about "negative experiences" with Defendant Gober;

4

(9) four other Mascoutah High School volleyball players who, along with Plaintiff, were on the 2021 team; and (10) three former Mascoutah High School volleyball players who played for Defendant Gober. (Doc. 32, pgs. 3-4). Since Plaintiff "casts a wide net" in discovery, Defendants argue it would be "highly prejudicial" to be barred from deposing these persons. (Doc. 32, pg. 4). Defendants submit it is "not fair to assume that deposing more than one or two girls would be repetitive since their feelings about the volleyball program vastly differ and each may provide a unique experience." (Doc. 32, pg. 4).

In response, Plaintiff argues an admission by Defendant Gober, in his deposition, "drastically narrow[ed]" the number of former players who need to be deposed. (Doc. 36, pg. 2). Plaintiff also states, "each player's subjective feelings or experiences about the conduct and/or Gober as a coach are not relevant to the issues" and instead constitute inadmissible character evidence (Doc. 36, pgs. 2-3). Nevertheless, Plaintiff admits some of the depositions sought by Defendants are relevant and necessary. (Doc. 36, pg. 2). In fact, Plaintiff objects to only 13 of the 21 individuals identified by Defendants. Plaintiff objects to a deposition of her current volleyball coach and former club volleyball coach, who did not coach Plaintiff during any of the seasons that she played for Defendant Gober, who is not a mental health professional, and who is merely "one of numerous people Plaintiff has spoken with about this matter." (Doc. 36, pg. 3). Plaintiff also objects to depositions of the two former Mascoutah High School volleyball players who allegedly left the volleyball team "due to negative experiences" with Defendant Gober, the Mascoutah High School volleyball player who allegedly made a separate complaint about Defendant Gober in the past, the two Mascoutah High School volleyball players who

5

allegedly spoke to their parents about "negative experiences" with Defendant Gober, the four Mascoutah High School volleyball players who were on the 2021 team with Plaintiff, and the three former Mascoutah High School volleyball players who played for Defendant Gober, as "there is no indication that these witnesses can offer anything more than inadmissible subjective opinions and/or character evidence." (Doc. 36, pg. 4).

Here, under Rule 26(b)(1), the Court **FINDS** Defendants have reasonably identified individuals who may possess information that is relevant to Plaintiff's claims.[1][2] With respect to Plaintiff's current volleyball coach and former club volleyball coach, the Plaintiff cannot say with certainty that he has no relevant information to discover. It is not uncommon for probative information to be revealed during the course of examination. But, even assuming he did not coach Plaintiff during any of the seasons that she played for Defendant Gober, Plaintiff admits he is "one of numerous people [she] has spoken with about this matter." (Doc. 36, pg. 3). In relation to the other group of individuals identified by Defendants, which comprises Mascoutah High School volleyball teammates of Plaintiff and other former Mascoutah High School volleyball players who played for Defendant Gober, the Court finds they likely have information that is relevant to Plaintiff's claims. Again, the Court need only look to Plaintiff's own statements, including that two of the former Mascoutah High School volleyball players

---

[1]The Court limits its discussion to only the 13 proposed witnesses that are objected to by Plaintiff.
[2]Since Plaintiff concedes it is appropriate to depose the eight other individuals listed in Defendants' Motion, the Court notes that this is not a case where "a party could circumvent the cap by taking ten deposition[s] of questionable relevance first and leav[ing] the most crucial depositions for the end, confident in the belief that leave of the court shall not be denied." *See Newell v. State of Wisconsin Teamsters Joint Council No. 39*, No. 5-cv-552, 2007 WL 3166757, *1 (E.D. Wisc. Oct. 25, 2007) (citing *Barrow v. Greenville Indep. School Dist.*, 202 F.R.D. 480, 482-83 (N.D. Tex. 2001)).

left the volleyball team "due to negative experiences" with Defendant Gober and three other Mascoutah High School volleyball players complained about Defendant Gober in the past or spoke to their parents about "negative experiences." (Doc. 36, pg. 4). At this stage in the case, it is speculative for Plaintiff to suggest that the testimony of these volleyball players would be overly subjective or inadmissible as character evidence. (Doc. 36, pgs. 2-4). Those are questions for another day, and each party retains the ability to object to the ultimate admission of evidence. Likewise, the Court declines to limit Defendants' request based on a purported admission by Defendant Gober at his deposition. (Doc. 36, pg. 2).

Instead, the Court agrees with Defendants that those players, as well as the four other teammates of Plaintiff on the 2021 team and the three former Mascoutah High School volleyball players who played for Defendant Gober, may have "feelings about the volleyball program [that] vastly differ" and "unique experience[s]" that are equally relevant to the case. (Doc. 32, pg. 4). This is especially true, at least with respect to the three former Mascoutah High School volleyball players who played for Defendant Gober, where Plaintiff's own Complaint alleges the same misconduct occurred in prior seasons.

Moreover, the Court believes deposing the 13 individuals identified by Defendants, and objected to by Plaintiff, would not necessarily be disproportional to the needs of the case in light of the considerations contained in Rule 26(b)(1). As Defendants note, in the 2021 season alone, the Mascoutah High School volleyball program had 32 players, 15 of whom played on the varsity team with Plaintiff. (Doc. 32, pgs. 4-5). And, for the reasons stated, the Court does not believe it is necessary to limit the ability of

Defendants to depose some of those players out of concern that their testimony would be cumulative, duplicative, or beyond the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C). The Court notes, in the interest of reasonableness and efficiency, Defendant intends to depose three witnesses per day. (Doc. 32, pg. 5). For these reasons, the Court **OVERRULES** Plaintiff's objections to the 13 witnesses identified by Defendants and **GRANTS** the Motion at Doc. 32.

### B. The Motion to Quash Subpoenas to Defendant Gober's Former Employers (Doc. 33)

Next, the Motion at Doc. 33 seeks to quash the subpoenas sent by Plaintiff to Southwestern Illinois College ("SWIC"), Southern Illinois University Edwardsville ("SIUE"), and Team Elite STL, LLC ("Team Elite"). (Doc. 33, pg. 2). Plaintiff seeks the "[c]omplete personnel file of…Women's Volleyball Coach Todd Gober…including but not limited to: hiring records, education and training records, performance reviews, disciplinary actions, complaints, investigations, resignation/termination documents, severance, and other settlements/agreements." (Docs. 33, pg. 2; 34, pgs. 3, 8, 12).

The scope of material obtainable by a subpoena under Federal Rule of Civil Procedure 45 "is as broad as [is] permitted under the discovery rules." *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002) (citing *Jackson v. Brinker*, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993)); *accord Cady v. Superior Pool Prods., LLC*, No. 13-cv-1533, 2014 WL 6461393, *1 (C.D. Ill. Nov. 18, 2014). The party opposing the discovery has the burden of showing the requested information is "overly broad, unduly burdensome, or not relevant." *See Graham*, 206 F.R.D. at 254 (citing *Wauchop v. Domino's Pizza*, 138

8

F.R.D. 539, 543 (N.D. Ind. 1991)); *see also Countryman v. Comm. Link Fed. Credit Union*, No. 11-cv-136, 2012 WL 1143572, *3 (N.D. Ind. April 3, 2012) (stating, in the context of a Rule 45 subpoena, " 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.' [Citation]."); *but see U.S. Equal Emp't Opportunity Comm'n v. AutoZone, Inc.*, No. 14-cv-3385, 2016 WL 7231576, *5 (N.D. Ill. Dec. 14, 2016) (agreeing with the requirement that a party, subpoenaing third-party employment records, show good reason for seeking the particular documents and the relevance of those documents to the claims and defenses in the case). As stated above, relevancy is construed broadly to encompass matters bearing on, or reasonably leading to matters bearing on, issues in the case. *See Armour*, No. 19-cv-678, 2022 WL 16572006 at *2; *accord Alderson v. Ferrellgas, Inc.*, No. 12-cv-305, 2013 WL 11325054, *2 (N.D. Ind. Aug. 22, 2013); *see also Vukadinovich v. Griffith Public Schools*, No. 2-cv-472, 2008 WL 5191451, *1 (N.D. Ind. Dec. 10, 2008) ("Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard."). Notably, Rule 45(d)(3) identifies particular bases on which the Court must or may quash a subpoena. *See* Fed. R. Civ. P. 45(d)(3). None of those bases are invoked by Defendants in this case.

Instead, Defendants note Defendant Gober has not worked at SWIC for 22 years or SIUE or Team Elite for over 10 years. (Doc. 33, pg. 2). Therefore, Defendants argue the records are irrelevant to Plaintiff's present claims. (Doc. 33, pg. 4). Defendants suggest

9

Plaintiff is on a fishing expedition "for alleged prior bad acts or propensity evidence," which is inadmissible under Federal Rule of Evidence 404(b)(1). (Doc. 33, pgs. 2-3).

In response, Plaintiff argues Defendant Gober admitted, in his deposition, to "similar conduct when previously coaching women's volleyball at all three of the subpoenaed entities." (Doc. 35, pg. 2). However, he denied any prior complaints, investigations, or forced resignations for that conduct. (Doc. 35, pg. 2). The Mascoutah High School athletic director also denied prior knowledge of such conduct or complaints about Defendant Gober. (Doc. 35, pg. 2). However, "[d]irectly contrary to this testimony, third parties…have reported to counsel for Plaintiff that there were in fact complaints against Gober for similar conduct as a volleyball coach, investigations for this conduct, and forced resignations in his prior volleyball coaching roles." (Doc. 35, pg. 2). Therefore, Plaintiff argues the requested records are relevant, necessary for impeachment and to assess credibility, and admissible as proof of motive, intent, knowledge, absence of mistake, and lack of accident under Rule 404(b)(2). (Doc. 35, pgs. 3-4). Plaintiff also states the records could show knowledge and/or deliberate indifference by the District, as it likely assessed Defendant Gober's coaching history in the hiring process. (Doc. 35, pg. 4).

Here, it is clear that certain requested records could be relevant and potentially revealing of acts that are admissible in evidence under Rule 404(b)(2). *See Ledonne v. Schuster*, No. 22-cv-2157, 2023 WL 2499881, *1, 3 (N.D. Ill. March 14, 2023) (court stating, in the context of subpoenaed past employment records in a case alleging constitutional violations by a police officer under § 1983, it did not see a "critical distinction" between the defendant officer's employer at the time of the incident and his previous employer,

10

as "[a] key concern underlying the discovery [wa]s…[the defendant's] past conduct as a law enforcement officer, and, specifically, whether he ha[d] a history of misconduct."); *see also Cady*, No. 13-cv-1533, 2014 WL 6461393, *1, 3 (finding, in the context of subpoenaed past employment records and a case alleging discrimination due to a disability, information indicating the plaintiff filed complaints, grievances, lawsuits, or other charges against former employers may be relevant to his motives or state of mind before his termination, credibility with respect to his actions, and modus operandi in dealing with employers). However, it is equally clear that Plaintiff's subpoenas would require the production of many irrelevant documents. The subpoenas expressly request Defendant Gober's "[c]omplete personnel file[s]," dating back to 1996 at the earliest. (Docs. 33, pg. 2; 34, pgs. 3, 8, 12). Although Plaintiff requests "hiring records, education and training records, performance reviews, disciplinary actions, complaints, investigations, resignation/termination documents, severance, and other settlements/agreements," the Court **FINDS** she must more closely tailor those requests to the claims in the present case in order to comport with Rule 26(b)(1) and (2). *See Alderson*, No. 12-cv-305, 2013 WL 11325054, *6 (finding non-party subpoenas were properly before the non-parties, where the defendant did "not request[] Plaintiff's entire personnel files from the employers" but instead "narrowed the scope of the requested information to matters at issue in th[e] case"); (Docs. 33, pg. 2; 34, pgs. 3, 8, 12).

Therefore, the Court **GRANTS** Defendant's Motion and **QUASHES** Plaintiff's subpoenas, as presently drafted. However, Plaintiff may serve more particularized subpoenas on SWIC, SIUE, and Team Elite, requesting documents from the

aforementioned categories of records that relate more closely to the specific claims of sex discrimination, retaliation, and intentional infliction of emotional distress in this case.

### III. Conclusion

For the foregoing reasons, the Motions at Docs. 32 and 33 are **GRANTED**.

**SO ORDERED.**

Dated: July 31, 2023

DAVID W. DUGAN
United States District Judge